UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

|  |  |
|---|---|
| Utility Craft, Inc. <br><br> Debtor. | Case No. 06-10816 |

### ORDER AND OPINION

THIS MATTER came on before the court on October 14, 2008, after due and proper notice, upon the Objection by Trustee to Claim Number 831 of Liliana Royal. Everett B. Saslow, Jr., the Chapter 7 Trustee, appeared on behalf of Utility Craft, Inc. (the "Debtor") and Jennifer F. Adams appeared on behalf of Liliana Royal (the "Creditor). After considering the evidence on record and the arguments of counsel, this court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy:

### FACTUAL BACKGROUND

The facts are undisputed. The Debtor operated a furniture business. On or about February 5, 2004, the Creditor ordered a couch from the Debtor and paid a $2,100.00 deposit. The Debtor delivered the couch to the Creditor. Upon delivery, the Creditor paid the Debtor the balance owed for the couch. However, at the time of delivery, the fabric on the couch was defective. The Debtor was not able to repair the couch and the manufacturer would not replace the couch. Therefore, the Debtor provided the Creditor with a store credit in the amount of $5,748.00, dated August 29, 2005 (the "Store Credit"). Before the Creditor redeemed the Store Credit to make a purchase, the Debtor filed for bankruptcy. On July 20, 2006, the Debtor filed a

voluntary Chapter 11 petition (the "Petition").  Subsequently, on January 21, 2007,  the Debtor converted to Chapter 7.  The Creditor filed a proof of claim on May 3, 2007 (the "Claim").  The Claim was based on the Store Credit for the returned defective couch.  The Claim consisted of a priority claim and an unsecured claim in the total amount of $5,748.00.  The total amount was divided into $3,523.00 as unsecured and $2,225.00[1] as a priority claim pursuant to 11 U.S.C. § 507(a)(7).  Attached to the Claim was a copy of the Store Credit.  The Trustee filed an objection to the claim on August 26, 2008 (the "Objection").  The Creditor responded to the Objection on October 2, 2008 (the "Response").

## LEGAL ANALYSIS

### A. Overview

The issue is whether the Store Credit arose from the deposit and thus entitled to priority status pursuant to 11 U.S.C. § 507(a)(7).  The Trustee's Objection asserts that the entire Claim should be reclassified as an unsecured, non-priority claim since the Claim is based upon the Store Credit rather than a consumer deposit.  The Trustee argues that the Store Credit is different from claims arising from a deposit for items not delivered or provided, as the Store Credit stems from a defective product not the deposit.

The Creditor argues that the Claim arose from the initial $2,100.00 deposit made before the commencement of the case in connection with the purchase of property for her personal, family, or household use and that the item was not delivered.  To support the position, the Creditor argues that a gift certificate is the same as a store credit.  As such, the Creditor asserts that the court should follow the reasoning applied in *In re W W Warehouse, Inc.*, 313 B.R. 588

---

[1] Even though the Creditor deposited $2,100.00, the Creditor seeks the statutory maximum priority claim of $2,225.00 under 11 U.S.C. § 507(a)(7), since the Creditor argues that the entire Store Credit of $5,748.00 is entitled to priority.

(Bankr. D. Del. 2004), and find that the Store Credit arose from the deposit and has to be paid on a priority basis.  In the alternative, the Creditor argues that the couch was never delivered.  The Creditor argues that since the couch was defective, the couch was a non-conforming good.  As such, the Creditor argues that delivery of non-conforming goods are not delivered for purposes of Article 2 of the Uniform Commercial Code (the "UCC"), so the Creditor is entitled to a priority claim pursuant to 11 U.S.C. § 507(a)(7).

Section 507(a) of the Bankruptcy Code sets forth ten categories of claims that are entitled to priority in bankruptcy cases.  *See* 11 U.S.C. § 507(a).  Statutory priorities are "intended to assure payment, if possible, to certain classes of claims by requiring that they be paid before others are satisfied."  *New Neighborhoods, Inc. v. W. Va. Workers' Comp. Fund*, 886 F.2d 714, 718 (4th Cir. 1989).  However, in bankruptcy there is a preference for the debtor's estate to be equally distributed among all creditors. *Howard Delivery Serv, Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006).  *See In re W W Warehouse*, 313 B.R. at 592 (stating that "equality of distribution among claimants is a central policy of the Bankruptcy Code ... Priority should not be afforded unless it is founded on a clear statutory purpose ... In other words, if one claimant is to be preferred over others, the purpose should be clear from the statute."); H.R. Rep. No. 95-595, at 186 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6147 (stating that "though the general policy of the bankruptcy laws is equality of distribution among all creditors, current law makes certain exceptions based on a showing of special circumstances or needs.").  As such, the priority statutes should be construed strictly and narrowly.  *E.g., Boston Reg'l Med. Ctr. Inc. v. Mass. Div. of Health Care Fin. and Policy*, 365 F.3d 51, 57 (1st Cir. 2004); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986); *In re W W Warehouse*, 313 B.R. at 592; *In re Olga Coal Co.*, 194 B.R. 741, 745 (Bankr. S.D.N.Y. 1996); *In re Pittston*

*Stevedoring Corp.*, 40 B.R. 424, 428-29 (Bankr. S.D.N.Y. 1984). The burden is on the party seeking to claim priority status to prove that the claim qualifies for priority status. *E.g., In re FBI Distrib. Corp.*, 330 F.3d 36, 42 (1st Cir. 2003); *In re Nat'l Steel Corp.*, 321 B.R. 901, 905 (Bankr. N.D. Ill. 2005); *In re Heritage Village Church and Missionary Fellowship, Inc.*, 137 B.R. 888, 892 (Bankr. D. S. C. 1991);

Title 11, section 507(a)(7) allows a seventh priority status to certain individual consumer deposits. Specifically, section 507(a)(7) allows priority status to:

> allowed unsecured claims of individuals, to the extent of $2,225[2] for each such individual, arising from the deposit, before the commencement of the case, of money in connection with purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). A deposit is "the act of giving money or property to another who promises to preserve it or to use it and return it in kind." *Blacks's Law Dictionary* (8th ed. 2004). Section 507(a)(7) allows priority status for "persons who made deposits for goods or services to be provided to them by the debtor for essentially consumer goods or services, when those goods or services were not provided by the debtor." *In re Globe Bldg. Materials, Inc.*, 345 B.R. 619, 628 (Bankr. N.D. Ind. 2006).

Section 507(a)(7)[3] was added in the Bankruptcy Reform Act of 1978. Congress stated that the section was "added as a result of testimony before the subcommittee on civil and constitutional rights concerning the problems that consumers have encountered with bankrupt

---

[2] Pursuant to 11 U.S.C. § 104(b), the dollar amount is adjusted every three years. For cases commenced on or after April 1, 2004, the amount in effect was $2,225.00. Currently, beginning with cases commenced on or after April 1, 2007, the amount in effect is $2,425.00.

[3] BAPCPA, enacted October 17, 2005, changed the numbering, but not the content, of this section from 11 U.S.C. § 507(a)(6) to 11 U.S.C. § 507(a)(7).

retail businesses with whom the consumers have deposited money for goods and services." H.R. Rep. No. 95-595.  The enactment of the section was in response to the failure of retailer W.T. Grant to honor scrip purchased by customers for use in the future purchase of merchandise. *See* Collier ¶ 507.08[1] (stating that the "drafters of the Code believed that it was appropriate to provide some protection to consumers ... [u]nlike businesses that knowingly extend credit and run the risk of nonpayment, consumers that make advance deposits on merchandise do not typically realize that they are extending credit when they make an advance payment for goods or services.").   Specifically the legislative history cites to consumers paying money on a lay-away plan, placing a deposit on merchandise, buying a service contract, and buying a contract for lessons or a gym membership as examples of the sorts of situations section 507(a)(7) should remedy.  *See* H.R. Rep. No. 95-595.

**B.  The Store Credit does not Qualify as a Deposit within the Realm of 11 U.S.C. § 507(a)(7)**

The Creditor asks this court to find that the Store Credit provided by the Debtor after delivery of a defective product qualifies for priority status pursuant to § 507(a)(7).  The court does not agree.

In *In re W W Warehouse*, the creditors were holders of unused gift certificates issued by the debtor pre-petition.  313 B.R. at 589.  The court declined to treat the purchase of a gift certificate as a final and complete transaction and held that it is a deposit entitled to priority pursuant to §507(a)(7).  *Id*. at 595.  Reviewing the legislative history and meaning of the term "deposit," the court determined that "to relegate gift certificate holders to the status of general unsecured creditors perpetuates the very problem Congress sought to remedy."  *Id*.  Specifically the court stated that "customers do not purchase gift certificates ... as the ultimate purchase," and

that "[c]onsumers expect merchants to apply some or all of the face value of the gift certificate toward the ultimate purchase." *Id*.

In allowing the creditors priority status for the gift certificates, the court declined to follow the reasoning in *In re Northwest Fin. Express, Inc.*, 950 F.2d 561 (8th Cir. 1991). In *In re Northwest Fin. Express*, the debtor marketed and sold money orders through retail grocery and convenience stores. *Id*. at 562. These money orders were not FDIC insured and were in-fact checks issued by the debtor in exchange for cash. *Id*. The money orders were payable at a specific bank as long as the debtor had sufficient funds in its account. *Id*. The debtor would sell the money orders to consumers who would give them to the creditors to purchase products and the creditors would later redeem the money orders. *See id*. The court did not grant priority status for the creditors. *Id*. at 563. The court reasoned that section 507(a)(7) priority is for "the purchase of a product (a transferable instrument) for immediate delivery which product is tradeable in lieu of cash." *Id*. Essentially, the "consumer got what it purchased, namely a money order; whether the money order was honored was not part of the transaction." *In re W W Warehouse*, 313 B.R. at 595 (analyzing the reasoning in *In re Northwest Fin. Express,* 950 F.2d 561).

After reviewing the statutory language, the legislative history, and prior case law, this court finds that the Creditor's Store Credit is not entitled to priority status pursuant to § 507(a)(7). This court will construe the statute strictly and narrowly. The Creditor deposited $2,100.00 for the purchase of a couch. The Debtor delivered the couch to the Creditor. *See e.g., Design Plus Store Fixtures, Inc. v. Citro Corp.*, 131 N.C. App 581, 583, 508 S.E.2d 825, 826 (1998) (stating that the seller delivered nonconforming tables; tables considered delivered, even though a nonconforming good); *Black's Law Dictionary* (8th ed. 2004) (stating a definition of

delivery as "the giving or yielding possession or control of something to another"). *But see In re Terra Distributing, Inc.*, 148 B.R. 598, 600 (Bankr. D. Idaho 1992) (stating that the transaction falls under Article 2 of the UCC, §28-2-601,[4] which allows rejection of nonconforming goods; therefore, "because [the buyer] was entitled to reject the delivery of the telephone as nonconforming, there has been no "delivery" for the purposes of section 507(a)(6)"). At the point of delivery, the Creditor paid the remaining balance owed for the couch. Due to the fabric defect on the couch, which the Debtor was unable to repair, the Debtor issued the Store Credit to the Creditor in August 2005. The Store Credit included the amount of the initial deposit. Hence, the transaction is complete as it relates to § 507(a)(7). Following the reasoning in *In re Northwest Fin. Express*, whether the Creditor decided to use the Store Credit is not part of the inquiry.

The Store Credit is not a gift certificate and unlike the other examples cited in the statute's legislative history, which are examples where consumers paid a deposit for items and services either never received or only partially fulfilled. In this case, the Creditor paid a deposit, received the couch, and paid the remaining balance owed in the transaction at the time of delivery. Neither the statute, nor the legislative history, contemplates the statute's application when a product is purchased, discovered to be defective, and then returned. This court will not further expand the breadth of the statute. As such, the Store Credit is not a deposit, and the couch was delivered or otherwise provided for. The Creditor's claim is not entitled to priority pursuant to § 507(a)(7).

## **CONCLUSION**

---

[4] The case applied Idaho law. The relevant section of the UCC is identical to N.C. Gen. Stat. § 25-2-601.

Based upon the foregoing, the Court SUSTAINS the Trustee's objection. The Creditor's Claim shall be allowed as a general unsecured non-priority claim.

IT IS SO ORDERED.

# SERVICE LIST

Liliana C. Naficy-Royal
200 Trinidad Drive
Tiburon, CA 94920 1040

Everett B. Saslow, Jr.
P. O. Box 989
Greensboro, NC 27402

Jennifer F. Adams
P. O. Box 20570
Greensboro, NC 27420-0570

Benjamin A. Kahn
P. O. Box 3463
Greensboro, NC 27408

Michael D. West
P. O. Box 1828
Greensboro, NC 27420